UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

SUIT SUPPLY (U.S.A.), INC. a Foreign Profit
Corporation D/B/A SUITSUPPLY

      Defendant.

_____/

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, SUIT SUPPLY (U.S.A.), INC., a foreign profit corporation d/b/a SUITSUPPLY (hereinafter referred to as "SUITSUPPLY"), for declaratory and injunctive relief, and damages, and alleges as follows: This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase socks.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, SUITSUPPLY, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, SUITSUPPLY, is a company that sells men clothing, shoes, and accessories. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "SUITSUPPLY".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://suitsupply.com/en-us/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing

4

information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of November 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

**Suitsupply**   https://suitsupply.com/en-us/

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 129.0.6668.60

Screen Reader: NVDA v. 2024.3.1

Video Recorder: OBS Studio 30.2.3

**Barriers**

**Poor Focus Management:**

Focus is frequently misplaced or incorrectly assigned, causing confusion for keyboard and assistive technology users. The navigation menu often directs focus to elements on the underlying page instead of focusing within the visible modal or menu. Users are also allowed to interact with underlying page elements while menus or modals are active, disrupting the logical flow of navigation (WCAG 2.4.3). Additionally, focus is skipped or jumps between elements unpredictably, such as in the "Your Info" form and the State dropdown list, making it difficult for users to complete forms (WCAG 2.4.3).

**Inadequate Keyboard Accessibility:**

Several key elements, including the navigation menu, back button, search button, and delete buttons in product cards and modals, are not operable via keyboard. This lack of keyboard operability hinders navigation for users who rely solely on keyboard interaction, making it difficult to perform basic tasks such as searching, selecting, or deleting items (WCAG 2.1.1).

**Lack of Visible Focus Indicators:**

Many interactive elements, such as buttons in the navigation menu, product info blocks, services block, and footer, lack visible focus indicators. This makes it difficult for keyboard users to track their navigation and know which element is currently focused, significantly impeding accessibility (WCAG 2.4.7).

**Missing Descriptions for Non-Text Content:**

Product images and key visual elements on the site lack alternative text or descriptions for screen reader users. This creates significant barriers for visually impaired users, who are unable to understand essential product information or interact meaningfully with the site's content (WCAG 1.1.1).

**Uncommunicated Form Errors and Instructions:**

Screen readers fail to provide adequate instructions for filling out forms, particularly in the Customize Modal and various account and checkout forms. There is also no feedback when users enter invalid characters or fail to complete required fields, leaving them unaware of the errors and preventing successful form submission (WCAG 3.3.1, 3.3.2). Additionally, the Birthday fields and the "View Password" button in the sign-up forms are inaccessible via keyboard.

**Bypass Mechanism Issues:**

There are no mechanisms provided to bypass repeated content blocks, such as navigation menus, footers, and header elements. This forces keyboard users to navigate through

redundant content repeatedly, reducing navigation efficiency and increasing frustration (WCAG 2.4.1).

**Ineffective Accessibility Plugin (AudioEye):**

The accessibility adjustments offered by the AudioEye plugin are ineffective. Despite the plugin's presence, several critical accessibility barriers remain unresolved, including issues with keyboard navigation, focus management, and non-text content descriptions. Furthermore, there is no effective option for users to make accessibility adjustments tailored to their needs. This highlights a broader concern: relying solely on an overlay solution like AudioEye does not address the underlying accessibility barriers across the site. For users with disabilities, particularly those using screen readers or relying on keyboard navigation, the plugin fails to provide meaningful improvements to the user experience.

This combination of barriers, compounded by the inadequacy of the accessibility plugin, significantly affects the usability of the site for users with disabilities. Addressing these issues holistically is crucial to providing a truly accessible and inclusive experience.

**Violation 1: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users are allowed to navigate the navigation menu when it is not visible, which breaks the logical sequence of interactions and creates confusion, particularly for users relying on assistive technology.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVL0_aNjA9JHhOU_1T_R0hUBVhCT3YZB

9wx2DyiB5fmk0A


**Violation 2: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly assigned to the invisible navigation menu rather than elements on the visible page, making it difficult for users to interact with the correct content.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESD6SpKdILhEjQL2PZJrMh4BgWC8mkhzpl

DDqAwhkjlKVg


**Violation 3: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

While the navigation menu is visible, users are incorrectly allowed to navigate the underlying page instead of interacting with the visible menu. This breaks the logical flow of interactions.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EY6G0yqNGAlOsbFbVJCOpqcBlIZrdNdXeHsm9_kERzAiHA


**Violation 4: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly given to elements on the underlying page while the navigation menu is visible, leading to a confusing and inefficient navigation experience for keyboard users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EX1eTSuo9Y1OoLDjO_aJNvkB-TPYWIJped6mK2aNwTqrNA

**Violation 5: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The back button in the navigation menu can't be operated using a keyboard and does not allow users to return to the main menu, creating accessibility barriers for users relying on keyboard navigation.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EftSX3BzlRlKl4NvWY2WfQABWVruI6yruz CgUfawSULKYQ


**Violation 6: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

The search button in the navigation menu lacks a visible focus indicator, making it difficult for keyboard users to track their navigation and interact with the button.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcG8aO_jjGBMmrlFi5aA7MYB1SR7Mjykba

YzACEW8R4-og

**Violation 7: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The search button in the navigation menu is not operable via keyboard, preventing users

who rely on keyboard navigation from accessing the search functionality.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETvQnmk7tm1Jtf6Fll3iNjwBULq7T5U_lSRN

UGUeiA6t2w

**Violation 8: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The search bar in the navigation menu is not accessible via keyboard, making it

impossible for users who rely on keyboard-only navigation to use the search feature.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQPEl6Q5NtdMuc9lgU1eoxMBVtAcuqTWP

1oEYNaEQkvanA

## Violation 9: 2.4.7 Focus Visible

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

Buttons in the Header block and "Shop The Look", and other elements in the product info block lack visible focus indicators, preventing keyboard users from navigating efficiently.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EauaLD0maKZBiEiY0lXrSacBO2lM7W2qwc

_07UV7cKQubQ

## Violation 10: 1.1.1 Non-text Content

All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below. Controls, Input If non-text content is a control or accepts user input, then it has a name that describes its purpose.

14

(Refer to Success Criterion 4.1.2 for additional requirements for controls and content that accepts user input.) Time-Based Media If non-text content is time-based media, then text alternatives at least provide descriptive identification of the non-text content. (Refer to Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

Product images do not have alternative text or descriptions for screen readers, leaving visually impaired users without essential product information.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EayiVa-

Q8kNGmhH8UvNOonIBVeCToMMaj0boOVd8Jx_Ncg


**Violation 11: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The screen reader does not provide proper instructions or feedback to users select to use

the jacket form options within the Customize Modal, leaving visually impaired users

unsure of their selections.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-

suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfTFHh1dumVCp9VzLNTAQgQBCpOLcbw

A6WciCN-s9UeARA


**Violation 12: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web

pages

There is no mechanism to skip to the main content or top of the page from the footer

block, forcing keyboard users to manually navigate through repeated elements.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EU8j3Wv_u4VNh53TYScoJ14BUqVQG7RfA

AaVpbeudPVP-w

**Violation 13: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The form elements within the Customize Modal are not operable via keyboard, preventing users who rely on keyboard navigation from interacting with the customization form.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbI9Wwx7RmxEsUrmSXnFH2EBJVGX4667

lAh05ALWVAOLBw

**Violation 14: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

Screen readers do not communicate important product information such as color options, price, or material in the product section, leaving visually impaired users without critical details to make informed decisions.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/search?q=suit

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ES_wrbar0K1MhnaU20HMl0cBSt3At6uqaRG RoQOaThYqgQ

**Violation 15: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users are allowed to navigate to product details even when they are not visible, breaking the logical sequence of navigation and causing confusion.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/search?q=suit

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Eft0NAtda39Dh8T4WJPRTcUBsqPWXiRU- iWAFlBzdduvPw

**Violation 16: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

The Title and Wish List buttons in the product section lack focus indicators, making it difficult for keyboard users to interact with these elements.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/search?q=suit

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZCQ5zS97kFIuRjjDUp5R7IBQrxuhPN0A0NTINLE2UXAJA

**Violation 17: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

The "Alter Your Fit" and "Design Your Own" buttons in the services block lack visible focus indicators, making it difficult for keyboard users to identify their focus while navigating.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERkEgolbRDhKvXfajWKdLZgBxypzOaZ29j

PKM5_R04siaA

**Violation 18: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus

indicator is visible.

Multiple list items in the footer block do not have visible focus indicators, making it hard

for keyboard users to navigate the footer efficiently.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/black-perennial-tailored-fit-havana-

suit/P9365.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EaHtKpTepC9FhXBJs-UrDrcBlF0KGwli_wP-

-9P9HNMqKw

**Violation 19: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user

agents, including assistive technologies.

The screen reader does not confirm when a size button is selected in the product info block, making it difficult for users to know if their selection was successful and that a modal will be displayed.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/light-taupe-relaxed-fit-roma-suit/C6852-S.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWAVuQ8AjOREmAXS2UdPJyQB4VUTSJ XqeSRyfKDOWHIaeA


**Violation 20: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

Users can only select one size in the "Select Your Size" modal using the keyboard, limiting their ability to fully interact with the size options.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/light-taupe-relaxed-fit-roma-suit/C6852-S.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdXnrECS1vJPnPUC2qhCCRIBup6x6aY9n_ ETlrQQarVaYg

**Violation 21: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The Delete button in the Bag Modal is not visible and cannot be operated via keyboard, preventing users from removing items from the bag.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/men/suits/light-taupe-relaxed-fit-roma-suit/C6852-S.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVwtyStspcxPjTltBvxKgB4B1k-NjTI17-J64VoQlLWHPg

**Violation 22: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The Delete button on product cards within the cart products list is not visible and cannot be operated via keyboard, preventing users from deleting items.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdLIEl3bR5VCiKQGSv2YbPgBnUtA4Wx41

83aORvB0iKkMg

**Violation 23: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web

pages

There is no mechanism to skip to the login form from the navigation menu, forcing

keyboard users to navigate through multiple unnecessary elements.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-Login

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EakU_tl3Fp1IjSBCZjsEKP0Biz5fF7Fg1aJwjG

Ftak2TXw

**Violation 24: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The "View Password" button in the New Customer Form is not operable via keyboard,

preventing users from revealing their password for review.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

23

https://suitsupply.com/en-us/login?rurl=1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQUf94fu4LBImIpjw6lhaYsBrXjQKhJy08Mf

OznaTaR1Ug


**Violation 25: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The screen reader does not announce invalid characters in the email field of the New Customer Form, causing users to enter incorrect information without feedback.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/login?rurl=1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETENVtqOsodDmjGNNQ5jHV4BALZMh3G

m2CyAdUoYaNPEfw


**Violation 26: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

Screen readers do not identify when the invalid white space character is entered in the email field, leaving users unaware of input issues and preventing form submission.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-Login

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETMPkBJFRxJDkshAZQodwMMBq0e_CzT

XltKrsG9xwrr3DQ


**Violation 27: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

Screen readers do not detect whitespace characters in the email field of the New

Customer Form, leaving users unaware of input errors and causing failed submissions.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/en-us/login?rurl=1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZxYHjn3nW9IrC8azf_TIFMB35__IflX0kU

VLJHkYhsmqA


**Violation 28: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning

or operation, focusable components receive focus in an order that preserves meaning and

operability.

Focus skips the top fields and jumps directly to the address field at the bottom of the Your Info Form, disrupting the logical flow of navigation and confusing users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-Begin?stage=information#information

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZ_GhRLkEChImCKvK8V9aswB07GkQVM JrPUsHcLTq9p0Bg

**Violation 29: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The screen reader does not provide feedback for invalid or empty fields such as name, phone, or email in the Your Info Form, preventing users from correcting errors and completing the form.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-Begin?stage=information#information

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQeI7J9eDGBApteYuJ0r4wAB067mNA726C GBAoAtMTWeYw

**Violation 30: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

Users are unable to select a state from the State List in the Your Info Form using the keyboard, creating a barrier for keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-Begin?stage=information#information

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUCw8sQ8jr5Ot4ei5ZTDb2oBXjEDlI89ZhNmkdSrDOUM5w


**Violation 31: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus moves away from the State drop-down list while it is visible, making it difficult for users to complete the form and select their state.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-

Begin?stage=information#information

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZ2JAkzbHFZPl7NazX8My24BI-

KoMy44nfTZ0tSEMv1dtw


**Violation 32: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The screen reader does not announce an error message when an invalid zip code is

entered in the Your Info Form, preventing users from correcting their mistakes.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://suitsupply.com/on/demandware.store/Sites-USA-Site/en_US/Checkout-

Begin?stage=information#information

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZDbShWjDQxNtwkXd8_8eF0Bb1ugJ3vssN

RLUmJUGDO4ZA

30)     Although the Website appeared to have an "accessibility" statement displayed and an

"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,

still could not be effectively accessed by, and continued to be a barrier to, blind and visually

disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted

to access the statement, thus, was unable to receive any meaningful or prompt assistance through

the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)    The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)    Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)    Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)    Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in November and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually

disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.    Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.   Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.      Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses

pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned

counsel for the filing and prosecution of this action and has agreed to pay them a

reasonable fee for their services.

74)      WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for

the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue

to monitor and update its website on an ongoing basis, to remove barriers in order that

individuals with visual disabilities can access, and continue to access, the website and

effectively communicate with the website to the full extent required by Title III of the

ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal

disabled logo within its website, wherein the logo [1] would lead to a page which would state

Defendant's accessibility information, facts, policies, and accommodations.  Such a clear

display of the disabled logo is to ensure that individuals who are disabled are aware of the

availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for

web accessibility by implementing a website accessibility coordinator, a website

---



[1]

application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy

to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.     An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

Cookie policy

**About cookies**

Cookies are pieces of information that the Suitsupply website sends to a computer while the individual is browsing the Suitsupply website. Cookies work in combination with content within the website itself, to capture and remember information. For instance, cookies are used to remember and process the items in a shopping cart. Cookies may be a session cookie or a persistent cookie which indicates how long the cookie will stay on a device. A persistent cookie is stored on a device for a longer period of time unless this is deleted by the individual before the expiry date. A session cookie will be deleted when an individual end the browser session of Suitsupply website. These cookies help Suitsupply to collect data such as language preferences, webpages visited, time spent on the Suitsupply website and other web traffic data. Suitsupply uses this data to improve services, analyse the activities and to personalize the individuals experience. Cookies may allow Suitsupply to analyse which personalized offers may interest the individual and how the individual interacts with other offers and to understand the use of the individual on other websites.

**Information collected**

The information Suitsupply obtained from the use of cookies will not usually contain the individuals' personal data. Suitsupply may obtain information about your computer or any other electronic device which is used to access our website, such as IP address, browser ID and /or other internet log information.

In certain circumstances Suitsupply may also collect personal information about the individual but only where the individual voluntarily provides it (e.g. sign up for personalized offers) or where a customer purchase goods or services from Suitsupply.

**Consent for cookies**

In most cases Suitsupply will need consent to use cookies on this website. The exceptions are where the cookie is essential for Suitsupply to provide a service that is requested, or essential to the inherent functionality of the website (e.g. to enables to store items in a shopping basket and/or to use our check-out process).

Here is a link to the Suitsupply website Privacy statement. If the individual uses the Suitsupply website and consented for using marketing cookies the individual allows Suitsupply the use of cookies for the purpose described in this website cookie policy and our website privacy policy.

**Type of cookies**

There are generally three categories of cookies: 'Functional', 'Analytical', 'Marketing'. Suitsupply uses all three categories of cookies. The individual can find out more about these cookies below.

**Functional cookies**

These cookies are essential, as they help make the website usable by enabling functions such as for the individual to move around the website. These cookies are required to let

the website function. These cookies allow Suitsupply to remember preferences like preferred language. The data Suitsupply collects is anonymised and therefore Suitsupply cannot identify the individual and these are not used to track the browsing activity on other sites or services.

**Purposes:**

Cookies who direct the individual to the website channel that is most suitable for the device (mobile/desktop);

Cookie that ensures no cookie is placed for tracking without consent;

Cookie that remembers wish lists;

Cookie that enables the individual to travel through the website and will stay connected to the right web server.

Keep track of the items stored in the shopping basket;

Remember information the individual fills in during purchase process;

Remember preferences such as location, language;

Reading out browser settings to be able to display our website optimally on your screen;

Detecting abuse of our website and services, for example by registering a number of failed log-in attempts;

Offering the possibility to save log-in data so that the individual does not have to enter it every time;

Making it possible to respond to our website.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his

computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.


WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.



Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434